Richard A. **BARSNESS** and Cheryl Barsness, Appellants,

v.

Madison **SCOTT**, Appellee.

No. 04–02–00928–CV.

Court of Appeals of Texas, San Antonio.

Nov. 5, 2003.

ceedings. *In the Matter of A.A.B.*, 110 S.W.3d at 558.

Thomas H. Crofts, Jr., Nissa M. Sanders, Crofts & Callaway, P.C., San Antonio, Christopher L. Jensen, Marvin W. Jones, Sprouse, Smith & Rowley, P.C., Amarillo, for appellants.

Penny L. Raney, Donal R. Schmidt, Jr., Raney & Schmidt, P.C., Dallas, for appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: CATHERINE STONE, Justice.

Richard and Cheryl Barsness (the "Barsnesses") seek to have this court set aside a judgment enforcing an arbitration award. We affirm the trial court's judgment as reformed.

### BACKGROUND

Madison Scott purchased from the Barsnesses their shares of stock in their company, which owned two pizza companies. The purchase agreement acknowledged a pre-existing dispute between the Barsnesses and Mr. Gatti's, Inc. (a restaurant franchiser) would not be an impediment to the sale. The purchase agreement contained an arbitration provision. This arbitration provision provided:

Any dispute, controversy or claim arising out of or relating to this Agreement shall be finally settled ... by three (3) arbitrators ... An award or determination of the arbitration tribunal shall be final and conclusive upon the parties, judgment thereon may be entered by any court of competent jurisdiction and no appeal thereof shall be made by the parties.

The purchase agreement also included indemnity provisions, which precluded settlement of any third party claims without the consent of the indemnitor. In a separate side agreement, the details of the Mr. Gatti's dispute were set forth. The parties further agreed that if a judgment was taken against Scott by Mr. Gatti's, the Barsnesses would reimburse Scott for up to one-half of the judgment or settlement.

Mr. Gatti's sued Scott and the Barsnesses, but they entered into a settlement agreement. Several months later, Mr. Gatti's filed a motion to set aside the settlement agreement. Before the motion was ruled on, Scott entered into a settlement agreement with Mr. Gatti's. Scott then brought a cross-claim against Richard Barsness and filed a third party claim against Cheryl Barsness. In the settlement agreement that Scott entered with Mr. Gatti's, Scott agreed to pay two million dollars in cash to Mr. Gatti's. In a supplemental agreement between Scott and Mr. Gatti's, the parties agreed that Scott could satisfy the settlement by executing and delivering a franchise agreement to Mr. Gatti's. The Barsnesses cross-claimed against Scott, and the disputes went to separate arbitrations.

Scott and the Barsnesses amended their claims before the arbitration proceedings. Scott claimed that Richard Barsness had misrepresented the quality of his pizza recipes, misled him about the status of his

contractual relationship with Mr. Gatti's, and misrepresented the status of his business tax liability. Scott sought actual and punitive damages for Barsness's alleged fraud and breach of contract. Scott further sought a declaratory judgment against the Barsnesses concerning Scott's agreement to pay Mr. Gatti's two million dollars. Scott pleaded:

> Specifically, as a result of litigation between Scott and Gatti's, Scott has reached a settlement whereby he agreed to pay Gatti's Two Million Dollars ($2,000,000) in damages. To this end, Madison Scott seeks a declaratory judgment that Barsness is responsible for one-half (½) of this settlement amount as specifically set forth under the stock purchase agreement and the letter agreement of the stock purchase agreement.

Scott also sought a declaratory judgment that "Barsness is responsible for Scott's attorney's fees and costs associated with all litigation arising from all inaccuracies in or breach of all representations, warranties, covenants, and/or agreements contained in the contract."

The Barsnesses' counterclaim sought relief for Scott's default on the notes, security interests, and loan letter agreements executed in connection with the stock purchase agreement. The Barsnesses requested recovery based on acceleration of Scott's indebtedness, foreclosure of security interests, avoidance of lease assignments in contravention of the agreement, and damages for waste.

The arbitration panel heard the Scott versus Barsness controversy during the week of April 1, 2002. The panel issued an order following the arbitration proceeding, which provides in pertinent part as follows:

*Findings:*

. . .

9. Scott entered into a settlement agreement with Mr. Gatti's which, among other things, established what he claimed was Barsness's duty to indemnify him for one-half of the settlement amount, to-wit $1,000,000.00.

. . .

*Conclusions:*

10. Neither party is entitled to rescind the transaction that closed October 14, 1999;

11. Barsness committed a violation of § 27.01 [Texas Business and Commerce Code];

12. Barsness's actions did not rise to the level of malicious, reckless or wanton behavior;

13. Scott is entitled to a reinstatement of the debt instruments held by Barsness, such reinstatement to be effective February 1, 2001;

14. The effect of such reinstatement is to require a recalculation of amounts due to Barsness from Scott under the debt instruments, calculation at the contract rate of nine (9%) percent per annum rather than at a higher default rate; any overpayment that results, if any, regardless of the promissory note to which it applies, shall be credited against the outstanding principal sum of $2,400,000.00;

15. Neither party is the "prevailing party," in that full relief has not been granted under this arbitration award to either party; and

16. [The order did not include a conclusion for No. 7];

17. [The order did not include a conclusion for No. 8];

18. Barsness shall take nothing with respect to his claims against Scott.

19. All relief not hereby granted is expressly DENIED.

20. Each party is entitled to submit this award to a court of competent jurisdiction for entry as a judgment.

In response to a motion entitled "Application For Modification or Clarification of Award" filed by Scott, the arbitration panel modified its order. The arbitration panel designated Scott as the prevailing party and awarded Scott one dollar as nominal damages and $356,613.76 for attorney's fees and costs. The order did not otherwise eliminate its prior ruling implicitly denying Scott's claim for indemnity on the Scott–Mr. Gatti's settlement. The arbitrators' award was the same in all respects as its previous order except that it provided:

*Conclusions:*

. . .

6. The evidence is legally insufficient, and Madison Scott is therefore not entitled to damages in excess of nominal damages.

7. Madison Scott is awarded the nominal sum of $1.00 as damages in this case.

8. As the prevailing party, Madison Scott is awarded the sum of $288,358.96 as attorney's fees and $68,254.80 as costs of arbitration for a total award of $356,613.76 against Barsness.

9. Barsness shall take nothing with respect to his claims against Madison Scott.

10. All relief not herein granted is expressly denied.

11. Madison Scott is entitled to submit this award to a court of competent jurisdiction for entry as an enforceable judgment.

Scott filed a motion for entry of judgment with the trial court, requesting the court to "sign a judgment for [him] against Richard and Cheryl Barsness consistent with the Modified Award of the Arbitration Panel." Scott claimed he was entitled to an award of $356,613.76 and "a declaration by the Court that Richard and Cheryl Barsness have the duty to indemnify [him] in the amount of One Million Dollars ($1,000,000.00) with respect to [his] settlement with Mr. Gatti's." The Barsnesses filed their own motion for entry of judgment in response to Scott's motion. The Barsnesses' motion challenged the validity of the arbitration panel's decision to award Scott $356,613.76 for attorney's fees. Their motion also noted that, contrary to Scott's motion, Scott's indemnity proposition was inconsistent with the modified arbitration award which implicitly denied his claim for indemnity. The Barsnesses subsequently filed a motion to vacate the modified award, but the trial court proceeded to reduce the arbitration panel's modified order to judgment. The trial court, however, added a provision requiring the Barsnesses to reimburse Scott in the amount of one million dollars for the Scott–Mr. Gatti's settlement. This indemnity award was ordered due upon Scott's written notice to the Barsnesses that he had complied with the terms of the Scott–Mr. Gatti's settlement. Following the trial court's entry of judgment, the Barsnesses filed this appeal, claiming the trial court erred in: (1) rendering judgment that the Barsnesses are required to reimburse Scott in the amount of one million dollars for the Scott–Mr. Gatti's settlement; and (2) confirming the modified arbitration award.

## DISCUSSION

As a preliminary matter, we must address whether we may even entertain this appeal because both parties ex-

pressly waived their rights of appeal in their stock purchase agreement. The arbitration provisions in the parties' agreement included a provision for arbitration finality: "An award or determination of the arbitration tribunal shall be final, and conclusive upon the parties, judgment thereon may be entered by any court of competent jurisdiction and no appeal thereof shall be made by the parties." A trial court's judgment is appealable notwithstanding such a provision when there is fraud, misconduct, or gross mistake. *Grissom v. Greener & Sumner Constr., Inc.,* 676 S.W.2d 709, 711 (Tex.App.-El Paso 1984, writ ref'd n.r.e.). Further a waiver of appeal in the arbitration agreement does not preclude judicial review of matters concerning Texas Civil Practice and Remedies Code sections 171.088 and 171.091. *See id.* (recognizing matters concerning articles 237 and 238 of the Revised Civil Statutes, the precursors to sections 171.088 and 171.091 of the Civil Practice and Remedies Code, may be subjected to judicial review despite a waiver of appeal in the arbitration agreement).

■ The Barsnesses claim that the trial court's judgment should have conformed to the arbitration panel's only legitimate order, the arbitration panel's original order. They contend the trial court, pursuant to section 171.088 of the Civil Practice and Remedies Code, should have vacated the portions of the arbitration panel's modified order that awarded Scott nominal damages and attorney's fees because the arbitration panel had no basis under either section 171.054 or section 171.091 of the Civil Practice and Remedies Code to substantially change its award. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.054, 171.088, 171.091 (Vernon Supp.2003). The Barsnesses contend the trial court also erred by adding a one million dollar indemnity award to the judgment because it had no

basis under section 171.091 to add such a provision. *See id.* §. 171.091. Because the Barsnesses are challenging matters relating to sections 171.088 and 171.091 of the Civil Practice and Remedies Code, the parties' waiver provision does not preclude the Barsnesses from bringing this appeal. Accordingly, Scott's "Motion to Dismiss and Motion for Damages" is denied.

### Indemnity Award

■ In their first issue, the Barsnesses claim the trial court erred in entering a judgment that requires the Barsnesses to reimburse Scott in the amount of one million dollars because the court did not have authority to change the arbitration panel's implicit denial of Scott's indemnity claim. The Texas Arbitration Act ("TAA") authorizes a court to modify or correct an arbitration award under limited circumstances. The TAA specifically limits when a court may modify or correct an existing award to the following situations: (1) when there is a miscalculation of figures or a mistake in a description of a person, thing, or property referred to in the award; (2) when there is an award on a matter not submitted to the arbitrators and it can be corrected without affecting the merits of the award; and (3) when the award is imperfect in form, not affecting the merits of the controversy. *Id.* § 171.091. In this case, none of the aforementioned grounds support the trial court's decision to include a one million dollar indemnity award in its judgment because the trial court included relief the arbitration panel implicitly denied Scott.

■ The arbitration panel divided its orders into two distinct sections, one entitled "Findings" and one entitled "Conclusions." The arbitration panel's orders make only one reference to Scott's indemnity claim. In the findings section of its orders, the panel mentions indemnity in

Finding No. 9, stating that "Scott entered into a settlement agreement with Mr. Gatti's which, among other things, established what he claimed was Barsness's duty to indemnify him for one-half of the settlement amount, to-wit $1,000,000.00." The fact that the only reference to the indemnity issue occurs in the findings section of the arbitration award suggests that the panel did not intend to make an indemnity award to Scott. All relief granted by the panel is contained within the Conclusions section of its orders. Had the panel intended to make an award corresponding to Finding No. 9, it logically would have included such award in the conclusion section. We therefore believe the arbitration panel implicitly denied Scott's request for an indemnity recovery because it did not include an indemnity award in the decretal portion of either its original or modified orders. Because the panel's decisions reflect no intention of awarding Scott one million dollars as an indemnity award, the trial court exceeded its authority by adding the indemnity award to its judgment.[1]

Scott claims the panel intended to award him an indemnity recovery because he informed the panel that he perceived Finding No. 9 to be an indemnity award and the panel included nothing in its modified order to contradict such perception. In the first paragraph of his "Application For Modification or Clarification of Award," Scott provides:

1) Finding No. 9 states that Scott established his claim that Barsness owes $1,000,000 with respect to Scott's settlement with Gatti's. Unless the arbitrators advise otherwise, it is Madison Scott's intention to submit a judgment to the Court in favor of Madison Scott in the amount of $1,000,000 based upon finding No. 9 and Conclusion No. 2 (finding that Barsness violated 27.01). In the alternative, if Finding No. 9 is not an award of monetary damages, then Scott asks the panel [to] clarify the effect of such finding ... Accordingly, Scott requests that the Court clarify the effect of Finding No. 9 and specify whether additional litigation is necessary to fully determine the claim.

Scott contends that because the panel did not "advise [him] otherwise" or "clarify the effect of Finding No. 9" as requested, the panel essentially acknowledged that his interpretation of Finding No. 9 was correct. Scott's argument is unpersuasive.

In the second paragraph of his motion, Scott provides:

2) In the event the conclusion regarding $1,000,000 is not a measure of Scott's actual damages, then Scott tenders the following arguments: Although the panel found in Conclusion No. 2 that Barsness did commit fraud pursuant to Section 27.01 of the Texas Business and Commerce Code, there is no conclusion relating to actual economic damages to Scott as a result of this violation. Section 27.01 unequivocally states that a person who violates 27.01(a) is liable to the person defrauded for actual damages. Finding No. 18 notes that Scott incurred damages which he was forced to mitigate. Therefore, pursuant to 27.01 and Texas common law, Barsness is liable for actual damages in some amount. [footnote omitted]. Barsness is responsible, at least, for the cost of Scott mitigating his damages. Moreover, Scott incurred additional actual damages in the following manners....

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.091. We further note that the TAA "does not allow a reviewing court to modify or correct an award based on a arbitrator's 'evident mis-take' in failing to award damages." *Callahan & Assocs. v. Orangefield Indep. Sch. Dist.,* 92 S.W.3d 841, 844 (Tex.2002).

The arbitration panel revised its original order and specifically addressed the arguments Scott raised in paragraph two of his motion. In Conclusion No. 6 of the panel's modified order, the panel specifically states "[t]he evidence is legally insufficient, and Madison Scott is therefore not entitled to damages in excess of nominal damages." By addressing Scott's measure of damages complaint from paragraph two of his motion, the panel necessarily decided that Scott was incorrect in his belief, in paragraph one, that the panel concluded he is entitled to recover one million dollars from the Barsnesses. The Barsnesses' first issue is sustained.

### Nominal Damages & Attorney's Fees

In their second issue, the Barsnesses argue the trial court erred in confirming the arbitration panel's modified award because the panel exceeded its powers by changing the merits of its original award to grant Scott nominal damages and attorney's fees. Scott, however, contends the arbitration panel's modified award is justified under section 171.054. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.054 (arbitrators may modify or correct an award on the grounds that are stated in section 171.091 or to clarify the award).

### Clarification

▇▇▇ Scott asserts that the panel's modification of its original award is justified because the panel was merely clarifying its previous award. An arbitrator may clarify an award when the original award is ambiguous and requires further explanation. *See Daniewicz v. Thermo Instrument Sys., Inc.*, 992 S.W.2d 713, 717 (Tex. App.-Austin 1999, pet. denied)(finding modified award to be permissible clarification where more than one reasonable interpretation of original award existed and the modified order was consistent with the original award). Here, in order for the modified award to come within the narrow confines of the arbitrator's clarification authority, the original award must be subject to more than one reasonable interpretation and the modified award must be consistent with the original award. *See id.* The original award, however, is not open to more than one interpretation, and the modified award is inconsistent with the panel's original award. The original award expressly states "neither party is the prevailing party." The panel then proceeds to explain why it determined neither party was the prevailing party: because "full relief has not been granted under this arbitration award to either party." The original award contains no award for damages or attorney's fees and states "[a]ll relief not hereby granted is expressly denied." By contrast, the panel's modified order declares Scott as the prevailing party and awards Scott nominal damages and attorney's fees. Thus, the modified order makes a substantive modification of the original award because it grants Scott relief that he had been previously denied. As such, the modified order cannot be justified as a clarification under section 171.054(a)(2). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.054(a)(2).

Scott argues that because the panel found the Barsnesses violated section 27.01 of the Texas Business and Commerce Code, *see* TEX. BUS. & COM.CODE ANN. § 27.01(e) (Vernon 2002), the panel was required to award Scott attorney's fees. In Scott's view, the panel's failure to award attorney's fees rendered the original award ambiguous and, thus, subject to clarification. Although Scott claims ambiguity, his complaint does not concern an ambiguity in the original arbitration award, but rather, concerns a legal error made by the arbitration panel in failing to award him attorney's fees.

### Modification

▇▇ The TAA specifically limits when an arbitration panel may modify an exist-

ing award to the following situations: (1) when there is a miscalculation of figures or a mistake in a description of a person, thing, or property referred to in the award; (2) when there is an award on a matter not submitted to the arbitrators and it can be corrected without affecting the merits of the award; and (3) when the award is imperfect in form, not affecting the merits of the controversy. TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.054(a), 171.091(a). As previously discussed, the panel made a substantive modification of its award to include relief it had previously denied. Such a modification does not fall within any of the permissible grounds for modification under section 171.091 because such grounds contemplate the panel only making inconsequential changes to an award, which otherwise do not affect the merits of the controversy or the merits of the panel's original decision. *See id.* § 171.091(a).

 The question we must now determine is whether the trial court should have vacated the arbitration panel's modified award pursuant to section 171.088(a)(3)(A). We answer this question in the affirmative.

 An arbitrator's award has the same effect as the judgment of a court of last resort. *CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 238 (Tex.2002). We review arbitration awards very deferentially; we indulge every reasonable presumption in favor of the award and none against it. *Id.* An arbitration award must be set aside, however, on a showing "the arbitrators exceeded their powers." TEX. CIV. PRAC. & REM.CODE ANN. § 171.088(a)(3)(A). As stated by the Texas Supreme Court, "the authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication." *Gulf Oil Corp. v. Guidry,* 160 Tex. 139, 327 S.W.2d 406, 408 (1959). Arbitra-

tors therefore exceed their authority when they decide matters not properly before them. *See id.; City of Baytown v. C.L. Winter, Inc.,* 886 S.W.2d 515, 518 (Tex. App.-Houston [1st Dist.] 1994, writ denied).

Even under this limited definition of "exceeding," the trial court was required to vacate the arbitration panel's modified award. In this case, the arbitrators decided the merits of issues which were not properly before them, as the issues had already been presented to the arbitrators and rejected by them. Under the "Claims of Parties" section of the panel's arbitration order, the panel notes that Scott sought to recover damages and attorney's fees. Thus, it is undeniable that the parties conferred power of decision of these matters to the arbitration panel. When the arbitration panel issued its original award, it did not award damages or attorney's fees to Scott. After setting forth its various conclusions—none of which award Scott damages or attorney's fees—the panel stated "[a]ll relief not hereby granted is expressly denied." The panel's general denial of relief not expressly granted closed the door to any further consideration of the merits of the damages or attorney's fees issues by the arbitration panel. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.054(a), 171.091(a) (authorizing arbitrators to modify or correct an award under very narrow circumstances, but never authorizing arbitrators to act in a manner that affects the merits of the decision made or the merits of the controversy). When the panel subsequently modified its original award, when none of the requirements for modification under sections 171.054 and 171.091 were present, the panel exceeded its authority. The trial court was therefore required under section 171.088 to vacate the arbitration panel's

modified award. *Id.* § 171.088(a)(3)(A). The Barsnesses' second issue is sustained.

### Conclusion

 Based on the foregoing, we modify the trial court's judgment to eliminate those portions of the judgment that order the Barsnesses to pay Scott: (1) nominal damages in the amount of one dollar; (2) attorney's fees and costs in the amount of $356,613.76; (3) post judgment interest in the amount of $97.70 per day on the award for attorney's fees and costs; (4) one million dollars for the Scott–Mr. Gatti's settlement; and (5) post judgment interest in the amount of $273.97 per day on the one million dollar award.[2]

---

2. The supreme court indicates that "when arbitrators attempt to determine matters not submitted to their determination, as to such matters the award is void." *Guidry*, 160 Tex. 139, 327 S.W.2d at 408. However, if part of the award exceeds the authority of the arbitrator, the entire award is not void. "[T]he award will not be set aside if the excess may be disregarded and a valid award left standing, or if the excess may be regarded as mere surplusage." *Smith v. Barnett*, 373 S.W.2d 762, 765 (Tex.Civ.App.-Dallas 1963, no writ).