

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00215-CV

———————————————

NATHAN ROBINSON AND MISTI ROBINSON, INDIVIDUALLY AND AS REPRESENTATIVES OF ALL PERSONS SIMILARLY SITUATED, Appellants

V.

HOME OWNERS MANAGEMENT ENTERPRISES, INC. D/B/A HOME OF TEXAS AND WARRANTY UNDERWRITERS INSURANCE COMPANY, Appellees

———————————————

On Appeal from the 271st District Court
Jack County, Texas
Trial Court No. 15-02-019

———————————————

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

We address the current chapter of an ongoing saga between Appellants Nathan and Misti Robinson and the companies that provided warranty protection for construction defects in their home—Appellees Home Owners Management Enterprises, Inc. and Warranty Underwriters Insurance Company.[1]  Years ago, the trial court enforced an arbitration provision in the warranty document issued by Home Owners and referred the Robinsons' claims to arbitration.  During the arbitration, the Robinsons expanded their claims against Home Owners beyond a monetary recovery for defects in their home's construction to also include claims relating to a form of release that Home Owners allegedly required them to sign before it would pay their warranty claim.

This is the third appellate opinion generated from the release-related claims. Our court and the Texas Supreme Court have previously held that the Robinsons could not arbitrate the release-related claims as a class action because the arbitration agreement did not encompass class claims.

The present chapter involves a summary judgment in favor of Home Owners in which the trial court ordered that the Robinsons, individually and as class representatives, take nothing on the release-related claims.  One summary-judgment

_____

[1]Because their positions are aligned, we will refer to Appellees collectively as Home Owners.

ground asserted by Home Owners was that res judicata barred the Robinsons' further attempts to assert the release-related claims because those claims were or could have been previously asserted in the arbitration. The trial court decided the summary-judgment motion, but the Robinsons argue under their first issue, which is dispositive of this appeal, that the arbitrator should have initially decided whether res judicata barred the claim. We agree and hold that the question of res judicata presented an issue of procedural arbitrability that the arbitrator—not the trial court—should have decided. Thus, we reverse the trial court's grant of summary judgment, remand this case to the trial court, and order that the question of res judicata be referred to the arbitrator previously appointed to hear the Robinsons' individual claims.

## II. Background

The prior opinions of this court and the Texas Supreme Court thoroughly outlined the underlying facts; we will give only a sparse summary of the facts that preface the present controversy. Though other parties were involved in the controversy, the focus of the controversy is Home Owners' obligations and actions under the warranty document that it issued. Litigation began when the Robinsons sued Home Owners for negligence and breach of warranty.

The warranty contained a broadly worded arbitration provision. Shortly after being sued, Home Owners moved to compel the Robinsons' claims to arbitration. The Robinsons resisted that effort. The trial court eventually abated the litigation and appointed an arbitrator.

A lengthy arbitration hearing ensued, and the arbitrator issued an award that gave the Robinsons a substantial monetary recovery. The Robinsons and other parties filed motions to confirm the award. The trial court lifted the abatement that it had imposed when it initially referred the claims to arbitration and confirmed the arbitrator's award by decreeing that it had granted "the Motion to Confirm the Arbitration Award and [had] enter[ed] judgment in accordance with the Arbitration Award, which [wa]s attached . . . as Exhibit '1' and incorporated . . . by reference as if fully set forth at length."

The action by the Robinsons that generated both the prior appeals and the present appeal was their attempt to add arbitration claims. Those claims allege misdeeds by Home Owners related to the form of a release that Home Owners purportedly sought to have the Robinsons sign before Home Owners would pay their warranty claim. Shortly before the arbitration hearing commenced, the Robinsons filed a statement of claims in which they asserted the release-related claims and stated that those claims were brought as a class action.

Before the arbitration hearing commenced, Home Owners filed a motion with the arbitrator to strike the statement containing the release-related claims. The arbitrator denied that motion and entered an order that "bifurcated" the release-related claims from those he was about to hear. The arbitrator also documented the "bifurcation" in his final award.

After the entry of the arbitration award, the Robinsons filed additional statements of claims that re-urged the release-based claims. Home Owners filed motions contending that the class claims brought by the Robinsons were not arbitrable and that it was within the trial court's purview to decide whether they were arbitrable. The trial court entered an order finding that the question of arbitrability of class claims was one it decided, that the parties had not agreed that questions of arbitrability would be decided by the arbitrator, and that the warranty did not provide for class arbitration. We affirmed the trial court's judgment, and in turn, the Texas Supreme Court affirmed our judgment.

After the Texas Supreme Court issued its judgment, the focus in the trial court shifted to the controversy that we now review. Home Owners filed a motion for summary judgment that attacked the merits of the release-based claims. The Robinsons filed a response to Home Owners' motion that argued, among other things, that the Robinsons' individual claims had been compelled to arbitration. For this reason, the Robinsons argued that the trial court was not the proper forum to decide Home Owners' motion and that the trial court lacked the jurisdiction to hear it. The Robinsons also filed yet another statement of claims.

Home Owners countered with a second motion for summary judgment that added res judicata as a summary-judgment ground. The Robinsons responded to the second motion by asserting that the arbitrator should decide whether res judicata

barred their individual release-related claims and with arguments challenging Home Owners' merit-based attack on those claims.

The trial court granted Home Owners' motion for summary judgment and dismissed with prejudice all of the Robinsons' claims, whether individually or as a class representative.

### III.  Standard of Review

The Robinsons appeal from the grant of a summary judgment, and both sides cite to the summary-judgment standards of review to guide us in our resolution of the appeal.  We will recite those standards but note below that the standards of review that apply to the referral of claims to arbitration may be more applicable to our review.

"A trial court's decision to grant summary judgment is subject to de novo review."  *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018).  "Courts review the record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion."  *Id.* (internal quotation marks omitted).  To be entitled to the grant of a summary judgment, a party must establish that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law."  Tex. R. Civ. P. 166a(c).

"A defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment."  *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

6

The burdens placed on a party relying on an affirmative defense to obtain a summary judgment are

> the same . . . as [those placed on] a plaintiff urging summary judgment on a claim. This is because an affirmative defense is "an independent reason why the plaintiff should not recover," not an element of the plaintiff's cause of action. The party asserting an affirmative defense has the burden of pleading and proving it. Only when a party conclusively proves every element of its affirmative defense is it entitled to summary judgment. Thus, a defendant urging summary judgment on an affirmative defense must come forward with summary[-]judgment evidence for each element of the defense.

*Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citations omitted).

Should a defendant establish its affirmative defense as a matter of law, "the burden of production shifts to the non[]movant to defeat the defendant's affirmative defense." *Cohen v. Tour Partners, Ltd.*, No. 01-15-00705-CV, 2017 WL 1528776, at *4 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, no pet.) (mem. op.). A nonmovant has three avenues available to defeat a summary-judgment motion when the affirmative defense is established as a matter of law; the nonmovant may "(1) demonstrate[] that the motion's legal position regarding the affirmative defense is unsound, (2) raise[] a fact issue on the elements of the affirmative defense, or (3) set[] forth a counter-affirmative defense to the affirmative defense." *Id.*

But we question whether the summary-judgment standard is the most apt for our review of this appeal. Though this appeal is not precisely the review of a motion to compel arbitration, the issues are analogous in that the trial court refused to refer a

7

question to the arbitrator. When we review the refusal to refer a matter to arbitration, we apply an abuse-of-discretion standard that has the following parameters:

> We review a trial court's denial of a motion to compel arbitration for an abuse of discretion, but we review whether there is a valid and enforceable arbitration agreement de novo. *Brand FX, LLC v. Rhine*, 458 S.W.3d 195, 203 (Tex. App.—Fort Worth 2015, no pet.). If the party seeking to compel arbitration proves that a valid arbitration agreement exists, "a strong presumption in favor of arbitration arises[,] and the burden shifts to the party resisting arbitration to establish a defense to enforcing arbitration." *Id.* at 203–04.

> We review the question of whether the party resisting arbitration has established a defense to arbitration de novo. *Id.* at 204. However, we give deference to the trial court's determination of any facts relevant to a defense, if those determinations are supported by the record. *Id.* "If an arbitration agreement is present, the claims are encompassed by the agreement, and the party opposing arbitration failed to prove any defense to enforcement, the trial court has no discretion but to compel arbitration," and in that case, the trial court's denial of a motion to compel arbitration is an abuse of discretion. *Id.*

*Dow Roofing Sys., LLC v. Great Comm'n Baptist Church*, No. 02-16-00395-CV, 2017 WL 3298264, at *2 (Tex. App.—Fort Worth Aug. 3, 2017, pet. denied) (mem. op.).

## IV. Analysis

**A.  It is generally the arbitrator's, rather than the trial court's, role to decide whether res judicata bars subsequent claims in an arbitration.**

**1.  We set forth the elements of the affirmative defense of res judicata and the principle that res judicata may bar claims that were or could have been previously arbitrated.**

Res judicata is an affirmative defense that prevents the relitigation of claims that were finally adjudicated or that a diligent party should have litigated. *Travelers Ins.*

8

*Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 628 (Tex. 1992); *see also* Tex. R. Civ. P. 94. "The party relying on the affirmative defense of res judicata must prove (1) a prior final determination on the merits by a court of competent jurisdiction[,] (2) identity of parties or those in privity with them[,] and (3) a second action based on the same claims as were or could have been raised in the first action." *Joachim*, 315 S.W.3d at 862. As a general principle, "[r]es judicata can apply to bar re-arbitration of matters that have already been arbitrated." *W. Dow Hamm III Corp. v. Millennium Income Fund, L.L.C.*, 237 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2007, no pet.).[2]

> **2. We explain the substantive/procedural distinction that guides whether the trial court or the arbitrator decides arbitration-related questions.**

The question that we confront is for a claim referred to arbitration, which of the two decision makers—the trial court or the arbitrator—decides whether res judicata bars a claim. As with any question of arbitration, the most basic answer to this question turns on whether the parties agreed to arbitrate such a dispute. *G.T. Leach Builders, L.L.C. v. Sapphire V.P., LP*, 458 S.W.3d 502, 519 (Tex. 2015) (stating that a court's role "is first to decide whether the parties made a valid and presently enforceable agreement to arbitrate").

---

[2]For ease of reference, we refer to this case as *Dow* throughout the remainder of the opinion.

But a host of questions arise both in the initial determination of whether a claim is arbitrable and in the course of the arbitration proceeding and its aftermath. Determining whether the trial court or the arbitrator decides the questions that arise depends on whether the question is one of substantive arbitrability or procedural arbitrability. Questions of substantive arbitrability are for the court and questions of procedural arbitrability are for the arbitrator. *Id.* at 520–21.

In adopting the guidance of the United States Supreme Court in *Howsam v. Dean Witter Reynolds, Inc.*, the Texas Supreme Court explained that procedural questions "grow out of the dispute and bear on its final disposition." *Id.* at 520 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 592 (2002)). To further explain the distinction between questions of substantive versus procedural arbitrability, our supreme court noted that the United States Supreme Court has

> [q]out[ed] the Revised Uniform Arbitration Act of 2000[] [and has] explained that, "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide[,] and issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."

*Id.* (quoting *Howsam*, 537 U.S. at 85, 123 S. Ct. at 592).

Our supreme court also quoted from another United States Supreme Court opinion to explain the distinction between substantive and procedural questions:

> On the one hand, courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about "arbitrability." These include questions such as "whether the parties are bound by a

10

given arbitration clause[]" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."

On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. These procedural matters include claims of "waiver, delay, or a like defense to arbitrability." And they include the satisfaction of "prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate."

*Id.* at 521 (quoting *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34–35, 134 S. Ct. 1198, 1206–07 (2014)).

Our supreme court has continued to apply the substantive/procedural arbitrability distinction when determining whether the trial court or the arbitrator makes a decision. *See Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 398 (Tex. 2020) ("The availability of an arbitral forum is a matter of procedural arbitrability, which courts must allow arbitrators to decide." (citing *Leach*, 458 S.W.3d at 520)); *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525 (Tex. 2019) ("Gateway arbitrability issues are distinct from procedural or subsidiary questions that grow out of an arbitrable dispute and are presumptively for an arbitrator to decide." (citing *Howsam*, 537 U.S. at 84, 123 S. Ct. at 592)).[3]

---

[3]We see no distinction on the substantive/procedural question issue whether a case is controlled by the Texas Arbitration Act (TAA) or the Federal Arbitration Act (FAA). *Leach* dealt with the TAA but applied cases dealing with the FAA. 458 S.W.3d at 519 n.14. Both *Bonsmara* and *Robinson* dealt with the FAA but did not highlight any distinction between the FAA and the TAA that impacted the substantive/procedural question. *See Bonsmara*, 603 S.W.3d at 398; *Robinson*, 590 S.W.3d at 522.

11

3. **The vast majority of federal court opinions dealing with the issue hold that the arbitrator decides whether a subsequent claim in an arbitration is barred by res judicata.**

The Texas Supreme Court has not decided which decision maker in an arbitration determines the res judicata effect of an arbitration award. *Dow*, 237 S.W.3d at 754. The question, however, has been repeatedly addressed by the federal courts.

The following catalogs a selection of federal circuit court cases holding that the preclusive effect of an arbitration award is a matter for the arbitrator to decide: *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 131 (2d Cir. 2015) ("We reason from our prior decisions interpreting the FAA that the determination of the claim-preclusive effect of a prior federal judgment confirming an arbitration award is to be left to the arbitrators."); *Emp'rs Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*, 744 F.3d 25, 28 (1st Cir. 2014) (holding that the preclusive effect of a prior arbitration award on an arbitration pending between an insurance company and reinsurers was a matter for the arbitrator, rather than the federal district court, to decide); *Grigsby & Assocs., Inc. v. M Secs. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011) (stating that "res judicata is a question for the arbitrator, in the absence of an agreement to the contrary between the contracting parties"); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1132 (9th Cir. 2000) (stating that "a res judicata objection based on a prior arbitration proceeding is a legal defense that, in turn, is a component of the dispute on the merits and must be considered by the arbitrator, not the court"); *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc.*, 202 F.3d 965, 968 (7th Cir. 2000)

12

("[T]he preclusive effect of the first arbitrator's decision is an issue for a later arbitrator to consider.").

Admittedly, the circuit courts are not uniform in their view. The Third Circuit felt constrained by its prior precedent to hold that the trial court rather than the arbitrator should decide the application of res judicata. *See John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 139 (3d Cir. 1998). *Olick* gave a somewhat lukewarm justification for its holding:

> These competing considerations [of whether the trial court or the arbitrator decides the issue] present the court with a high order challenge. On the one hand, a realistic concern for the finality and integrity of judgments would arise if parties were free to ignore federal court decisions that have conclusively settled claims or issues now sought to be arbitrated. Yet[] arbitration is a matter of contract[,] and the FAA only authorizes a "limited review" of the parties' intent before compelling or enjoining arbitration. *See PaineWebber*[ *v. Hartmann*], 921 F.2d [507,] 511 [(3d Cir. 1990), *overruled on other grounds by Howsam*, 537 U.S. at 85, 123 S. Ct. at 592]. The issue is thoughtfully discussed in *Miller v. Runyon*, 77 F.3d 189, 193–94 (7th Cir. 1996), but that court fell short of providing a comprehensive answer. In the final analysis, we conclude that a decent respect for a precedent of this court dictates that we resolve the issue in favor of district court jurisdiction to decide the res judicata defense as it relates to a prior judgment.

*Id.* at 138.

And the Fifth Circuit appears not to have decided the issue; its most recent reference to the issue states that it will decide the question on a later day. *See Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 542 n.1 (5th Cir. 2016).[4] But a federal

---

[4]*Cooper* noted that "[s]ome courts have concluded that res judicata is generally an issue for the arbitrator rather than the court and is thus not a basis to enjoin

13

district court in the Fifth Circuit conducted an in-depth analysis of the issue and held that res judicata was a procedural question for the arbitrator.  *See Hancock Fabrics, Inc. v. Rowdec, LLC*, 126 F. Supp. 3d 784, 792 (N.D. Miss. 2015).

 *Hancock* initially noted the Fifth Circuit's failure to deal with the issue, except for a decades-old case that contained language suggesting that res judicata was an issue for the arbitrator to decide.  *Id.* at 789–90 (citing and quoting *Oil, Chem. & Atomic Workers Int'l Union v. Rohm & Haas, Tex. Inc.*, 677 F.2d 492, 494 (5th Cir. 1982), for proposition that "[w]hether the [arbitral] award can be given an effect akin to res judicata or stare decisis with regard to future disputes that may arise between the parties, neither the district court nor this court should decide.  If the parties do not agree, that issue itself is a proper subject for arbitration.").

*Hancock* also noted that the Fifth Circuit opinion that it cited predated the United States Supreme Court's discussion in *Howsam* that "expounded on procedural and substantive arbitrability, as well as the decision-making obligations of both the court and arbitrators as to those issues."  *Id.* at 790.  *Hancock* highlighted *Howsam*'s distinction in substantive/procedural questions that the Texas Supreme Court has highlighted by noting that *Howsam* "explained that matters implicating the procedural questions which grow out of a dispute and 'bear out its final disposition' are presumptively not for the judge, but for an arbitrator, to decide."  *Id.* (citing *Howsam*,

---

arbitration.  Because res judicata does not apply to bar arbitration here, we need not decide that issue today."  832 F.3d at 542 n.1 (citations omitted).

14

537 U.S. at 84, 123 S. Ct. at 592). *Hancock* then cataloged many of the circuit court opinions that we have set forth above that rely on *Howsam* to hold "that res judicata is . . . a procedural matter that is a question for the arbitrator, in the absence of an agreement to the contrary between the contracting parties." *Id.*

Because of the breadth of the arbitration clause involved in the parties' dispute, *Hancock* did not tarry when deciding that the clause was broad enough to place the procedural questions in the hands of the arbitrator. *Id.* at 792. The clause was broad ranging, covering "[a]ny dispute, claim[,] or controversy between the parties arising under or related to this Agreement or the parties' performance there-under." *Id.* at 790, 792.

*Hancock* also offered its own rationale regarding why questions of res judicata should be decided by an arbitrator; that rationale turned on the limited involvement that a court confirming a confirmation award has with the merits of the case. *Id.* at 790. The opinion noted the obvious fact that in an arbitration, the arbitrator hears and resolves the substantive claim. *Id.* at 790–91. The trial court had only "limited exposure to the facts and analysis underlying the arbitration decision" when it performed its limited role in the arbitration process of confirming the award. *Id.* at 791. This lack of involvement impaired the trial court's ability to apply the factors to be considered in deciding the question of res judicata. *Id.* It was the arbitrator who had charted the path to resolving the claims. *Id.* Because the merits were outside the purview of the trial court in confirming an arbitration award, *Hancock* agreed with one

15

of the circuit court opinions that the trial court had no special prerogative to decide the scope of its judgment confirming the award because of the limited scope of that judgment. *Id.* (citing *Emp'rs Ins. Co. of Wausau*, 744 F.3d at 29).

*Hancock* finally cited other federal district court opinions that reached the same conclusion that it had to assign the question of res judicata to the arbitrator. *Id.* at 791–92. *Hancock* cited *Broadscape.com, Inc. v. KDS USA, Inc.*, to support its holding that because "the court's scope of inquiry at the confirmation stage is so narrow and the arbitration clause was broad, the arbitrator was in a better position to determine the preclusive effect of the first arbitration." *Id.* at 792 (citing No. CIV. A. 01-CV-0607, 2001 WL 1063895, at *5–7 (E.D. La. Sept. 12, 2001) (order & reasons)). *Hancock* then cited *Biobased Systems, LLC v. Biobased of South Texas, LLC*, for its holding that "where the arbitration agreement required arbitration of all disputes[] and did not contain language that would require the res judicata defense to be treated differently than other disputes, the preclusive effect of the prior arbitration decision itself was a component of the dispute on the merits." *Id.* (citing No. H-06-2149, 2007 WL 1080114, at *1 (S.D. Tex. Apr. 9, 2007) (mem. op. & order)).

The federal opinions that we have discussed persuade us that generally the question of the res judicata effect of an arbitration award should be decided by the arbitrator. The federal holdings turn on the substantive/procedural question distinction explained in *Howsam* that our supreme court has adopted. And the practical rationale of *Hancock* is also persuasive: the arbitrator, rather than the court

16

confirming the arbitration award, is much better versed with what claims were actually at issue and were decided in the arbitration. Thus, we hold that the res judicata effect of an arbitration award is generally a question for the arbitrator.

### 4. Several Texas cases also hold that the arbitrator decides whether a subsequent claim in an arbitration is barred by res judicata.

The few Texas cases dealing with the question of who decides the res judicata question reflect *Hancock*'s rationale that the arbitrator's broad-ranging role in resolving the merits of a case make the arbitrator the best candidate to decide a merits-intensive issue such as res judicata. As the First Court of Appeals has explained,

> Res judicata is an affirmative defense on the merits. *See Williams v. Hous*[.] *Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 437 n.21 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Accordingly, it is a matter that "grow[s] out of the dispute and bear[s] on its final disposition," which under the *Howsam* Court's paradigm is one of procedural arbitrability. . . . 537 U.S. at 84, 123 S. Ct. at 592. That is, res judicata is a "component of the dispute on the merits and must be considered by the arbitrator, not the courts." *Chiron Corp.* . . . , 207 F.3d [at] 1132 . . . ; *accord Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135–36 ([2d] Cir. 1996). Some of these courts have expressly rejected the argument that requiring an arbitrator to determine the res judicata effect of a prior arbitral award will allow prior arbitral decisions to be relitigated ad infinitum: they reason that the parties have the same ability to pursue a res judicata defense before the second arbitrator as they would have before a court. *See Local 103 of Int'l Union of Elec*[.]*, Radio & Mach*[.] *Workers . . . v. RCA Corp.*, 516 F.2d 1336, 1341 ([3d] Cir. 1975); *accord Little Six Corp. v. United Mine Workers . . . Local Union No. 8332*, 701 F.2d 26, 29 (4th Cir. 1983); *Teamsters Local 623 v. United Parcel Serv., Inc.*, 786 F. Supp. 509, 513 (E.D. Pa. 1992); *Auto., Petroleum & Allied Indus. Emp*[s.] *Union, Local 618 v. Gelco Corp.*, 581 F. Supp. 1155, 1158 (E.D. Mo. 1984) ("If an arbitrator accepts Gelco's preclusion argument and the union continues to . . . arbitrate the same grievance involving the same parties, then Gelco may sue in this [c]ourt to compel the union to abide by the arbitrator's decision that the prior award precludes further arbitration.").

*Dow*, 237 S.W.3d at 755; *see also Aspri Invs., LLC v. Afeef*, No. 04-10-00573-CV, 2011 WL 3849487, at *5 (Tex. App.—San Antonio Aug. 31, 2011, pet. dism'd) (mem. op.) (citing *Dow* to support the proposition that "[a]s a general rule, res judicata is an affirmative defense for the arbitrator to decide"), *abrogated on other grounds by Hoskins v. Hoskins*, 497 S.W.3d 490, 493 n.4 (Tex. 2016).[5]

---

[5]*Dow* provided its own catalog of the federal precedents that assign the question of res judicata to the arbitrator:

> *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1109–10 (11th Cir. 2004) (dictum); *Chiron Corp.* . . . , 207 F.3d [at] 1132–33 . . . ; *Indep. Lift Truck Builders Union* . . . , 202 F.3d [at] 968 . . . ; . . . *Olick*, 151 F.3d [at] 139–40 . . . ; . . . *Belco Petroleum Corp.*, 88 F.3d [at] 135–36 . . . ; *Chi*[.]*Typographical Union No. 16 v. Chi*[.] *Sun–Times, Inc.*, 860 F.2d 1420, 1424 (7th Cir. 1988) (dictum); *Transit Mix Concrete Corp. v. Local Union No. 282, Int'l Brotherhood of Teamsters* . . . , 809 F.2d 963, 969–70 ([2d] Cir. 1987); *Butler Armco Indep. Union v. Armco, Inc.*, 701 F.2d 253, 255–56 ([3d] Cir. 1983); *Little Six Corp.* . . . , 701 F.2d [at] 29 . . . ; *Bos*[.] *Shipping Ass'n, Inc. v. Int'l Longshoremen's Ass'n*, 659 F.2d 1, 3 (1st Cir. 1981); *Local 103 of Int'l Union of Elec*[.]*, Radio & Mach*[.] *Workers* . . . , 516 F.2d [at] 1340 . . . ; *New Orleans Steamship Ass'n v. Gen. Longshore Workers*, 626 F.2d 455, 468 (5th Cir. 1980), *aff'd on other grounds*, 457 U.S. 702, 102 S. Ct. 2672, 73 L.Ed.2d 327 (1982); *Steris Corp. v. Int'l Union, Auto., Aerospace, Agric. Implement Workers . . . Local No. 832*, 489 F. Supp. 2d 501, 511–12 (W.D. Pa. 2007); *Basin Elec. Pow*[er] *Coop. v. PPL Energy Plus, L.L.C.*, 313 F. Supp. 2d 1039, 1042 (D. N.D. 2004); *N. River Ins. Co. v. Allstate Ins. Co.*, 866 F. Supp. 123, 129 (S.D. N.Y. 1994); *Teamsters Local 623* . . . , 786 F. Supp. [at] 512–13 . . . ; *Auto., Petroleum & Allied Indus. Emp*[s.] *Union, Local 618* . . . , 581 F. Supp. [at] 1158 . . . ; *see also Local 616, Int'l Union of Elec., Radio & Mach*[.] *Workers . . . v. Byrd Plastics, Inc.*, 428 F.2d 23, 26 ([3d] Cir. 1970). *But see S.F. Elec. Contractors Ass'n v. Int'l Brotherhood of Elec. Workers, Local No. 6*, 577 F.2d 529, 533–34 (9th Cir. 1978).

237 S.W.3d at 754 n.10.

*Dow* also rejected the reasoning of the Third Circuit's opinion in *Olick* to the extent that it refused to consign the issue of res judicata to the arbitrator. *Dow* rejected *Olick*'s rationale that "a court is inherently empowered to protect the integrity and finality of its own prior judgment, and this policy outweighs even the strong policy in favor of arbitration." 237 S.W.3d at 755. *Dow* noted that the Second Circuit specifically rejected this rationale because it ignored that judgments confirming arbitration awards are "qualitatively different" than traditional judgments and were entered "without reviewing either the merits of the award or the legal basis upon which it was reached." *Id.* at 756 (citing and quoting *Chiron Corp.*, 207 F.3d at 1133–34). Further, *Dow* concluded that the exception articulated in *Olick* would swallow the rule "if the judicial confirmation of an arbitration award were all that it took to bootstrap a prior arbitration award into the prior-court-judgment exception." *Id.*; *see also Citigroup*, 776 F.3d at 132 (distinguishing *Olick* because the judgment in *Olick* addressed the merits of the underlying claim).

> **5. A party that presents its case to the trial court for resolution cannot argue that the arbitrator should decide whether a claim is barred by res judicata.**

No matter the general rule that assigns the arbitrator the duty to decide a procedural question, such as res judicata, there is also authority for the proposition that a party may forfeit the argument that an arbitrator should decide whether the res judicata effect of an arbitration award bars the prosecution of additional claims. If a party prosecutes additional claims in the trial court that were arguably arbitrable as

part of the same transaction as prior claims that were arbitrated, the party's selection of that forum also means that it has, in essence, selected the trial court as the decision maker on the res judicata issue.

The First Court of Appeals explained this principle in *Premium Plastics Supply, Inc. v. Howell*, 537 S.W.3d 201, 206–07 (Tex. App.—Houston [1st Dist.] 2017, no pet.). In *Premium Plastics*, a party had dismissed a counterclaim that it had filed in the arbitration proceeding. *Id.* at 205. It then refiled that claim in the trial court. *Id.* The counterclaim was within the scope of the claims covered by the parties' arbitration agreement and thus was properly raised in that proceeding. *Id.* at 205–06. When the party dismissing the counterclaim in arbitration refiled the same claim in the trial court, its opponent filed a motion for summary judgment asserting that res judicata barred prosecution of the claim. *Id.* at 203. After the trial court granted the motion for summary judgment, the losing party asserted on appeal that the res judicata question should have been decided by the arbitrator and relied on the First Court's prior opinion in *Dow* and its holding that the question of res judicata was for the arbitrator. *Id.* at 206–07 (citing *Dow*, 237 S.W.3d at 754–55).

The First Court disagreed that *Dow*'s general rule referring res judicata questions to the arbitrator created a fact question that prevented the entry of a summary judgment. *Id.* As the following quote shows, *Premium Plastics* did not question *Dow*'s general principle but concluded that the principle did not apply to its facts:

20

Appellants argue that the res judicata issue in this case is likewise one of procedural arbitrability and therefore could only be decided by the arbitrator. But this is not a matter of arbitrability of additional claims in arbitration after a first arbitration. To the contrary, appellants voluntarily dismissed their counterclaims during the arbitration proceeding. They then continued arbitration on the other claims to a final award[] and now seek to try the claims they dismissed. Therefore, the question to be decided here is not whether the counterclaims cannot be arbitrated[] but rather[] whether they can be relitigated and were not compulsory counterclaims. *Tanox*[*, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*] demonstrates that, in these circumstances, the trial court has jurisdiction to determine the issue of res judicata. *See . . .* 105 S.W.3d [244,] 250, 270 [(Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g)] (affirming trial court's determination that res judicata based on prior arbitration proceeding barred litigation of defendant's counterclaims). *Dow* is inapposite. We therefore conclude that appellants failed to raise a fact issue regarding whether the trial court could determine that their claims were barred by res judicata.

*Id.* at 207. As we read *Premium Plastics*, the court held that it would not allow a party to be two-faced in its selection of a forum and further held the appellants to their decision on which forum they had chosen when they filed their counterclaim in the trial court.

**B.**   **We detail the winding path of the Robinsons' individual release-related claims in this proceeding and the Robinsons' persistent objections to allowing the trial court to make the determination of whether res judicata barred those claims.**

Here, the parties try to shoehorn themselves into the rule that each finds more beneficial. The Robinsons argue that their release-related claims had been referred to arbitration, and thus, the arbitrator should have decided how res judicata impacted the release-related claims. Home Owners argues that the Robinsons opted to pursue

21

those claims in the trial court and are now bound by that choice, just as the appellants in *Premium Plastics* were.

Each parties' briefing makes categorical statements of what the record shows about how the release-related claims were presented and to whom they were presented. We find the record more of a muddle than either of the parties acknowledges. With that state of affairs, the decision maker with the most information to resolve the question of whether the Robinsons could have or did litigate the release-related claims in the arbitration is the arbitrator. We conclude that the trial court should not have decided the issue of whether the Robinsons' individual release-related claims were barred by res judicata and that the determination whether res judicata barred the claims should have preceded a determination of whether the claims had merit.

As a starting point, Home Owners does not argue that the arbitration agreement between the parties lacks the breadth to cover the Robinsons' individual release-related claims or for the arbitrator to generally decide questions of procedural arbitrability. The arbitration provision is broad enough to vest the arbitrator with the power to decide procedural questions.[6] Instead, Home Owners argues that the

---

[6]The Texas Supreme Court's prior opinion in this case described the arbitration provisions in the limited warranty as follows:

> The limited warranty requires "mandatory binding arbitration of Unresolved Warranty Issues" and provides that "[t]his binding arbitration is governed by the procedures of the Federal Arbitration Act

Robinsons, like the appellants in *Premium Plastics*, eventually placed the res judicata determination in the hands of the trial court.

To understand how the release-related claims wound their way through the litigation process requires an admittedly tedious mapping of the path of those claims. It appears that the Robinsons' live statement at the time of the arbitration was their first amended statement of claims. The first amended statement does not allege the release-related claims. The first specific mention of the release-related claims comes in the Robinsons' first supplement to the previously filed amended statement of

---

[FAA]." The addendum requires the same: "All Unresolved Warranty Issues will be submitted to binding arbitration . . . [and] [t]his binding arbitration is governed by the procedures of the Federal Arbitration Act." Both contracts broadly define "Unresolved Warranty Issue" using identical language:

> All requests for warranty performance, demands, disputes, controversies[,] and differences that may arise between the parties to this [Limited Warranty or Addendum] that cannot be resolved among the parties. An Unresolved Warranty Issue may be a disagreement regarding:
>
> a. the coverages in this [Limited Warranty or Addendum];
>
> b. an action performed or to be performed by any party pursuant to this [Limited Warranty or Addendum]; [or]
>
> c. the cost to repair or replace any item covered by this Limited Warranty [or Addendum].

The addendum further defines "Unresolved Warranty Issue" as including "any other complaint or controversy regarding this . . . Addendum between the parties to the Addendum."

*Robinson*, 590 S.W.3d at 522–23 (footnote omitted).

23

claims.[7]  Home Owners contends that the first supplement "asserted <u>exclusively</u> class[-]action claims."  However, the first supplement is not so categorical and includes the statement in its opening paragraphs that "[t]his class action is authorized by Texas Insurance Code Section 541.251 and brought *individually* and by class representatives NATHAN ROBINSON and MISTI ROBINSON."  [Emphasis added.]

As discussed above, Home Owners moved to strike the first supplement.  The parties' next disagreement is how the arbitrator resolved the motion and what claims he bifurcated.

Without question, the arbitrator denied the motion to strike.  He also ordered that the first supplement was "bifurcated from the pending hearing scheduled" to occur shortly after the order was entered.  The order, however, does not state whether the bifurcation included the release-related claims arguably asserted by the Robinsons individually in the first supplement.

The parties then highlight the portion of the arbitrator's award that they would have us read as an indication that the arbitrator did or did not resolve the release-related claims.  The Robinsons quote and highlight the portion of the award carrying

---

[7]The full title of the document is "Plaintiffs' First Supplement To Plaintiffs' First Amended Statement Of Claims As Representatives Of All Persons Similarly Situated As To Home Owner's Management Enterprises, Inc[.], d/b/a[]Home Of Texas And Warranty Underwriters Insurance Company."

forward the bifurcation that the arbitrator implemented in his order denying Home

Owners' motion to strike the first supplement as follows:

> *All pleadings, claims*[,] *and issues* by and between the Robinsons as suggested Class Representatives and Home Owners Management Enterprises, Inc. d/b/a Home of Texas and Warranty Underwriters Insurance Company *sounding in or dealing with signed or unsigned* [*r*]*eleases, class action*[,] *and/or class certification* were bifurcated and severed from the Robinson[s'] "damage" issues in this Arbitration by previous order, and are not addressed in this Award.

Home Owners emphasizes the Mother Hubbard clause in the award that provides

that "[t]his Award of Arbitrator is a Full and Final Adjudication of all claims,

counterclaims, cross-claims[,] and the like submitted to the Arbitrator. Any and all

claims for relief not expressly granted in this Award are hereby DENIED." Once

again, these provisions are vague guidance on the impact of the bifurcation of the

Robinsons' individual release-related claims.

Home Owners' brief describes the Robinsons' next action after the arbitrator

issued his award as the filing of another statement of claims that "asserted an *individual*

*claim for breach of contract*, as well as class claims, *related to the alleged overbroad [r]elease that*

*had been proposed by [Home Owners] to the Robinsons during settlement discussions concerning the*

*Robinsons' individual construction-defect claims.*" [Emphasis added.] Home Owners' brief

then states that the Robinsons "demanded their class claims be compelled to

25

arbitration[,] and [Home Owners] objected."[8]  The statement of claims that Home

Owners described set in motion the trial court's ruling and the subsequent appeals to

this court and the Texas Supreme Court that determined the Robinsons' class claims

were not arbitrable.

After the Texas Supreme Court's opinion signaled the final loss in the

Robinsons' efforts to arbitrate the class claims, Home Owners turned its attack to the

merits of the release-related claims and filed its initial motion for summary judgment

that challenged the released-related claims.  The initial motion did not raise res

judicata as a ground to bar those claims.

The Robinsons responded to this motion, and their first argument to parry its

thrust was that the trial court was the wrong forum to decide the merits of the

Robinsons' individual release-related claims.  Specifically, the Robinsons' response

summarized their position as

> object[ing] to the trial court[']s] deciding the Robinsons' individual claims
> and this *Motion*[] and [as] request[ing] the [c]ourt [to] compel arbitration
> of such claims to the extent the [c]ourt has not already done so.  The
> Robinsons[], alternatively, request this [c]ourt abstain from ruling on the
> [Home Owners'] *Motion* and refer this *Motion* to the Arbitrator to decide.

On the same day that the Robinsons filed their response, they also filed their

fourth amended statement of claims that elaborated on the release-related claims.

---

[8]After the arbitration, the Robinsons, individually and as a class representative, filed a statement of claims that was based on the release-related claims.  That statement alleged that the claims were within the jurisdiction of the arbitrator.

26

This statement of claims divided the jurisdiction over who should hear the individual and class claims as follows:

> **The Arbitrator has jurisdiction [over] the individual claims pursuant to the [Home Owners'] demands for arbitration and the previous court order of July 1, 2015[,] compelling the individual claims to arbitration.** The trial court has jurisdiction over the class claims pursuant to the Texas Supreme Court's decision in *Robinson v. Home Owners Management Enterprises, Inc.*, No. 18-0504, issued on November 22, 2019. [Emphasis added in bold.]

Home Owners responded to the Robinsons' flurry of activity by filing a second motion for summary judgment. This motion elaborated on the evolution of the Robinsons' claims and added the defense of res judicata as a summary-judgment ground to bar the Robinsons' ability to prosecute the release-related claims. In essence, Home Owners asserted that the Robinsons' individual release-related claims were a part of the same transaction and occurrence that was the subject of the arbitration and that if the Robinsons' individual claims were barred, they could not act as class representatives.

Home Owners' motion emphasized the portion of the arbitration award that we have already highlighted, which states that all of the claims brought by the Robinsons had been adjudicated. The motion argued that the only claims bifurcated from the arbitration were class claims and not any individual claims brought by the Robinsons because "[t]he only claims that remained following the arbitration hearing were the class[-]action claims asserted in [the statement filed before the arbitration hearing raising the release-related claims] that the Arbitrator bifurcated from the

27

hearing on the Robinsons' individual claims." Home Owners set forth its position regarding how the release-related claims had progressed through the litigation and why the Robinsons had already litigated those claims in an argument that is revealing in how much it relies on the actions occurring during the arbitration and which turn on an interpretation of the arbitrator's award:

> The claims set forth by the Robinsons in the Fourth Amended Statement of Claims are clearly barred by res judicata. The Robinsons asserted a litany of claims against [Home Owners] in the arbitration proceeding through their First Amended Statement of Claims. Those claims arose out of the same construction-defect related allegations for which [Home Owners] presented the Robinsons with the [r]elease that is now at issue in the Fourth Amended Statement of Claims. Indeed, the First Amended Statement of Claims alleged that [Home Owners] violated the D[TP]A and Texas Insurance Code by, among other things, engaging in unfair settlement practices, and the Robinsons presented evidence on that issue during the arbitration hearing.
>
> All of the Robinsons' individual claims arising out of [the] transaction or occurrence for which the [r]elease was provided were litigated and finally adjudicated in the arbitration. The Arbitrator could not have been more clear on this issue. The Award specifically states that it "is a Full and Final Adjudication of all claims, counterclaims, cross-claims[,] and the like submitted to the Arbitrator. Any and all claims for relief not expressly granted in the Award are hereby DENIED." The Robinsons subsequently confirmed the Award in this [c]ourt. The only claims that remained following the arbitration hearing were the class[-]action claims asserted in the First Supplement (*i.e.*, the only claims asserted in the First Supplement) that the Arbitrator bifurcated from the hearing on the Robinsons' individual claims. [Record references omitted.]

The argument concluded with Home Owners summarizing why it had established the elements of the defense of res judicata.

28

The Robinsons responded to Home Owners' res judicata argument by again arguing that the trial court lacked the jurisdiction to decide the summary-judgment motion because their individual claims were ordered to arbitration. The Robinsons augmented this argument by asserting that the issue of res judicata raised a question of procedural arbitrability and that such a question was within the purview of the arbitrator to decide.

Home Owners filed a reply, arguing that the authorities that the Robinsons had relied on to support their argument were inapposite. Home Owners also argued that the Robinsons had previously admitted that the release-related issues had been litigated in the arbitration and that the only claims bifurcated from the arbitration were class claims. Home Owners attached portions of the record from the arbitration hearing to support its view that the Robinsons had discussed the release-related claims and had introduced evidence that pertained to them. Home Owners also included a footnote in their reply stating that the arbitrator had responded to a recent inquiry about the arbitration by noting that the award says what it says and that he believed that he no longer had jurisdiction "and [was] done."

The Robinsons then made various objections to Home Owners' summary-judgment motion, including two objections stating that they

> object to the trial court['s] hearing [Home Owners'] *Motion* because the individual claims [that were the] subject of the *Motion* ha[d] been compelled to arbitration pursuant to this [c]ourt's order of July 10, 2015. Moreover, [Home Owners is] estopped to contest that all individual

29

claims be compelled to arbitration[] because it was [Home Owners] who compelled such claims to arbitration.

. . . .

[The Robinsons] lastly object to hav[ing] [Home Owners'] *Motion* heard by submission particularly where the [c]ourt has not resolved the issue of who decides the individual claims—arbitration versus litigation. Until that issue is decided subject to a full hearing, this [c]ourt should not decide a summary[-]judgment motion on which it has been divested of jurisdiction because of arbitration.

The trial court denied these objections by written order.

The trial court also signed an order granting Home Owners' motion for summary judgment and decreeing that the motion was granted and that "all of [the Robinsons'] causes of action and pleadings, whether individually or as purported class representatives, against [Home Owners] are hereby DISMISSED with prejudice to the re-filing of same."

> **C.** **We reject Home Owners' effort to apply the rule of *Premium Plastics* and to deviate from the general rule that the arbitrator should decide the res judicata issue. The Robinsons' actions did not put the res judicata decision in the hands of the trial court.**

Our purpose in charting the path of the Robinsons' individual release-related claims and the Robinsons' consistent objections to the trial court's deciding whether res judicata bars those claims is that it rebuts Home Owners' primary argument regarding why the trial court should have decided the res judicata issue. Home Owners does not challenge the principle that generally assigns the question of the res judicata effect of an arbitration award to the arbitrator.

30

Instead, Home Owners posits that a distinction is to be found in the First Court's opinions in *Dow* and *Premium Plastics* that should guide us. In Home Owners' words, the distinction is that *Dow* held "that res judicata is an affirmative defense reserved for the arbitrator when a party is seeking to initiate **another arbitration**," while *Premium Plastics* held that "*Dow* does not apply where a party is seeking to proceed **in court** on claims that another party argues are barred by res judicata due to a prior arbitration." From this premise, Home Owners argues that

> the Robinsons filed both individual and class[-]action claims in court and neither the Statement of Claims nor the Fourth Amended Statement of Claims sought to compel any claims to arbitration. It was not until after [Home Owners] filed for summary judgment that the Robinsons first suggested [that] they wanted to return to the arbitrator to prosecute their "unresolved" individual [r]elease-related claims. Again, however, that is not what is prayed for in their pleadings. Moreover, the Robinsons cannot, as a matter of law, serve as class representatives unless they are legally capable of maintaining a claim against [Home Owners] for the same conduct they seek to redress on behalf of the proposed class. *See Grizzle*[ *v. Tex. Commerce Bank, N.A.*], 38 S.W.3d [265,] 274 [(Tex. App.—Dallas 2001), *rev'd on other grounds*, 96 S.W.3d 240 (Tex. 2002)]. Therefore, the [c]ourt had no choice but to address the res judicata issue to determine whether the Robinsons could proceed in court on their class[-]action claims regarding the alleged overbroad [r]elease. [Record references omitted.]

We disagree with Home Owners and conclude that this matter is a prime candidate to apply the rule that the arbitrator should determine the res judicata effect of his award on the Robinsons' release-related claims. Beginning with the broad question of which decision maker is usually assigned the task of deciding the res judicata question, the authority we have detailed establishes that procedural

31

questions fall to the arbitrator, and whether a subsequent claim is barred by the res judicata effect of a prior arbitration award is a procedural question. The practical rationale of *Hancock* regarding why the arbitrator should decide the res judicata question—because the arbitrator is the person most knowledgeable of what was actually litigated—is especially persuasive in this case. The trial court's role in this case was merely to confirm the arbitration award. The knotty questions—what claims were being arbitrated, the effect of the arbitrator's order denying the motion to strike the first supplemental statement raising the release-related claims and the bifurcation provision of the arbitration award, and what evidence exists to support the release-related claims—were all matters much more within the particular knowledge of the arbitrator than the trial court.

Nor do we see the narrow application of the rule in *Dow* that Home Owners advocates. The contention that the arbitrator may decide the procedural question of res judicata only if a party initiates a new arbitration attempts to superimpose a limitation not found in the case discussion of the principle. We do not understand why there has to be a new arbitration initiated before the decision maker with intimate knowledge of what occurred during the arbitration determines what claims were or were not litigated in the arbitration.

And to unpack Home Owners' argument that the rule of *Premium Plastics* should apply, the question of whether there is a demarcation between who would decide the individual versus class release-related claims was not finally resolved until the Texas

32

Supreme Court ruled that the class claims were not arbitrable. Home Owners' instant reaction was to file its first motion for summary judgment in an attempt to place the resolution of the merits of those claims in the hands of the trial court.

The Robinsons hardly acquiesced in that effort. In every filing after Home Owners filed their first summary-judgment motion, the Robinsons contended that the arbitrator should decide their individual release-related claims. When Home Owners raised the defense of res judicata, the Robinsons consistently argued that the arbitrator should be the one to decide that issue. These consistent actions are contrary to the intent shown by the appellants in *Premium Plastics* to have the trial court resolve their claim when they dismissed their counterclaim from the arbitration and refiled it with the trial court.

Home Owners cites several facts in an effort to argue that the Robinsons exhibited an intent to have the trial court decide the claims, but the facts cited do not show such an intent. Home Owners references two pages in the Fourth Statement and assert that the Robinsons did not pray for the arbitrator to decide those claims. But that argument ignores the allegation of jurisdiction in the claims that states that "[t]he Arbitrator has jurisdiction [over] the individual claims pursuant to [Home Owners'] demands for arbitration and the previous court order of July 1, 2015[,] compelling the individual claims to arbitration." That statement is hardly consistent with the premise that the Robinsons wanted the trial court to decide their individual claims. The other page referenced in the argument is from the statement of claims

that the Robinsons filed after the arbitration but before the trial court ruled that the class claims were not arbitrable. This statement notes that the arbitrator has jurisdiction over the claims. That allegation is again contrary to the inference that the Robinsons were submitting the release-related claims to the trial court.

Finally, we disagree with Home Owners that the trial court had to resolve the res judicata question because that question impacted whether the Robinsons could be class representatives. We agree that someone had to decide the question, but Home Owners' argument begs the question of why the trial court had to be the one to do so. If the arbitrator was the decision maker best equipped to make the res judicata decision, Home Owners' argument fails to explain why he should not do so nor why the trial court should not defer to his determination. Also, to adopt Home Owners' argument would introduce narrow and confusing exceptions to the issue of who decides questions of procedural arbitrability. Those exceptions would impair the rule's efficiency by creating subclasses of procedural questions and spawn even more litigation as parties argue how broad-ranging the effect of the question would be. Every time the issue arose, a trial court would have to make a vague prejudgment regarding whether it should resolve the question because that might impact a party's right to relief down the line.

## V. Conclusion

The arbitrator rather than the trial court should have decided whether the Robinsons' individual release-related claims were barred by res judicata based on the

34

assertion that those claims were or could have been resolved in the previous arbitration. Logically, the question was a preface to the determination of whether the release-related claims had merit. If we examine this case through the summary-judgment standard of review, we conclude that the Robinsons have raised a fact issue regarding whether the arbitrator should decide if their individual release-related claims are barred by res judicata. *See Premium Plastics*, 537 S.W.3d at 206–07 (analyzing whether nonmovant "raised a fact issue regarding the applicability of res judicata because the issue of res judicata could only be decided by the arbitrator, and not the trial court" and deciding that it had "raised a fact issue about the applicability of res judicata").

And though this is an appeal from a summary judgment, the standard of review applicable to determinations of whether claims are arbitrable seems more attuned to the issues before the trial court and is the more appropriate standard for us to apply. Our de novo review establishes that the res judicata issue is a procedural question within the purview of the arbitrator. To the extent that there is a factual question that arises from whether the Robinsons fell within the rule of *Premium Plastics* by filing those claims in the trial court, the Robinsons' statements of claims and their consistent objection to the trial court's resolution of the claims and the res judicata question show that the record does not support a finding that they opted to have the trial court decide the claims. Thus, the trial court abused its discretion when it

granted Home Owners' summary-judgment motion that raised res judicata. We sustain the Robinsons' first issue.[9]

We reverse the trial court's grant of summary judgment, remand this case to the trial court, and order that the question of whether the Robinsons' individual release-related claims are barred by res judicata be referred to the arbitrator previously appointed to hear the Robinsons' individual claims.

/s/ Dabney Bassel
Dabney Bassel
Justice

Delivered: March 11, 2021

---

[9]Because the Robinsons' first issue is dispositive of this appeal, we need not address the Robinsons' remaining three issues challenging rulings on their objections to Home Owners' summary-judgment motion, arguing that the trial court erred by granting summary judgment, and raising a cumulative-errors argument. *See* Tex. R. App. P. 47.1.